UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION


| | | |
|---|---|---|
| *In re:* | ) | CASE NO. 13-74158-bem |
| HUDGINS HOLDINGS, LLC | ) | CHAPTER 11 |
| | ) | |
| Debtor. | ) | |
| | ) | |


**CHAPTER 11 PLAN OF REORGANIZATION OF
HUDGINS HOLDINGS, LLC
DATED MAY 20, 2014**


JIMMY L. PAUL
*Georgia Bar No. 567600*
CHAMBERLAIN, HRDLICKA, WHITE
    WILLIAMS & AUGHTRY
191 Peachtree Street, N.E., 34th Floor
Atlanta, Georgia  30303
(404) 659-1410


*Counsel for Debtor Hudgins Holdings, LLC*

# TABLE OF CONTENTS

ARTICLE I: OVERVIEW AND EVENTS LEADING TO FILING CHAPTER 11 .................................................................................1

ARTICLE II: DEFINITIONS ...................................................................5

2.1    Definitions ...............................................................................5

2.2    Administrative Claim ..............................................................5

2.3    Allowed Administrative Claim ...............................................5

2.4    Allowed Claim ........................................................................5

2.5    Allowed Tax Claim .................................................................6

2.6    Bar Date ..................................................................................6

2.7    Bar Date Order ........................................................................6

2.8    Business Day ...........................................................................6

2.9    Case .........................................................................................6

2.10   Claim .......................................................................................7

2.11   Code ........................................................................................7

2.12   Confirmation Date ..................................................................7

2.13   Confirmation Order .................................................................7

2.14   Consummation Date ................................................................7

2.15   Court .......................................................................................7

2.16   Creditor ...................................................................................7

2.17   Credit Bid ................................................................................7

2.18   Debtor .....................................................................................8

2.19   Debtor's 223 McDonough Parkway Office/Warehouse .........8

2.20   Debtor's 363 McDonough Parkway Office/Warehouse .........8

2.21   Debtor's Blalock-Goldmine Road Property ...........................8

2.21   Debtor's 130 Acre Crisp County Farm ...................................9

2.23   Determined Fair Interest Rate .................................................9

2.24    Distribution Date.............................................................................9

2.25    Final Order ..................................................................................10

2.26    Net Sales Proceeds .......................................................................10

2.27    Non-Tax Priority Claim .................................................................10

2.28    Person.........................................................................................10

2.30    Petition Date ...............................................................................11

2.31    Plan ...........................................................................................11

2.32    Priority Tax Claim ......................................................................11

2.33    Pro Rata .....................................................................................11

2.34    Rules ..........................................................................................11

2.35    Section 6621 Interest Rate .............................................................11

2.36    Unsecured Creditor .....................................................................11

ARTICLE III: CLASSIFICATION OF CLAIMS AND INTERESTS .................12

3.1     Class 1 Claims:  Administrative Claims ..........................................12

3.2     Class 2 Claims:  Non-Tax Priority Claims ......................................12

3.3     Class 3 Claims:  Priority Tax Claims .............................................12

3.4     Class 4 Claims:    Peoples Bank Secured Claims - 223
        McDonough Parkway Office/Warehouse ...................................12

3.5     Class 5 Claims:    Peoples Bank Secured Claims - 363
        McDonough Parkway Office/Warehouse ...................................12

3.6     Class 6 Claim:  SFR/RoundPoint Secured Claim..............................13

3.7     Class 7 Claim:  South Georgia Banking Corp. Secured Claim ...........13

3.8     Class 8 Henry County Secured Tax Claim .......................................13

3.9     Class 9 Claims:   Unsecured Non-Priority, Non-Insider Claims,
        Non-Deficiency Claims ..........................................................14

3.10    Class 10 Claims:    Unsecured, Non Priority, Non-Insider
        Deficiency Claims .................................................................14

3.11    Class 11 Claims:  Unsecured, Non-Priority, Insider Claims ...............14

- ii -

3.12    Class 12 Claims:  Equity Interest Holder Claims ..................................14

ARTICLE   IV:   TREATMENT   OF   CLASSES   OF   CLAIMS   OR
INTERESTS  WHICH  ARE  NOT  IMPAIRED  UNDER
THE PLAN ...................................................................................15

4.1    Class 1 Claims:  Administrative Claims ................................................15

4.2    Class 2 Claims: Non-Tax Priority Claims .............................................15

4.3    Class 3 Claims: Priority Tax Claims ....................................................15

ARTICLE V: TREATMENT OF CLASSES OF CLAIMS OR INTERESTS
WHICH ARE IMPAIRED UNDER THE PLAN .........................17

5.1    Class  4  Claims:    Peoples  Bank  Secured  Claims  –  223
McDonough Parkway Office/Warehouse .....................................17

5.2    Class  5  Claims:    Peoples  Bank  Secured  Claims  –  363
McDonough Parkway Office/Warehouse .....................................19

5.3     Class 6 Claim:  RoundPoint Claim ......................................................21

5.4    Class 7 South Georgia Banking Corp. Secured Claim .........................27

5.5    Class 8 Henry County Secured Tax Claim ...........................................29

5.6    Class 9 Claims:   Unsecured, Non-Priority, Non-Insider, Non-
Deficiency Claims ........................................................................31

5.7    Class  10  Claims:    Unsecured,  Non-Priority,  Non-Insider,
Deficiency Claims ........................................................................32

5.8    Class 11 Claims:  Unsecured, Non-Priority, Insider Claims ...............32

5.9    Class 12 Claims:  Equity Interest .......................................................33

ARTICLE VI: TREATMENT OF EXECUTORY CONTRACTS ........................33

6.1    Assumption of Executory Contracts ....................................................33

6.2    Rejection ...........................................................................................34

ARTICLE VII: DISCHARGE; VESTING; INJUNCTION ...................................35

7.1    Discharge ..........................................................................................35

7.2    Vesting ................................................................................................35

7.3    Injunction .............................................................................................36

ARTICLE VIII: MODIFICATION OF PLAN ........................................................36

8.1    Reservation of Right to Amend Plan ...................................................36

ARTICLE IX: MANNER AND MEANS OF EXECUTION OF PLAN ...............37

ARTICLE X: RETENTION OF JURISDICTION ...................................................39

## ARTICLE I

## OVERVIEW AND EVENTS LEADING TO FILING CHAPTER 11

**A.** **Overview.**

Debtor Hudgins Holdings, LLC was formed August 7, 2000 as a holding company for the purposes of acquisition, development, management of investment properties, including commercial property and farmland. At the time of filing this Chapter 11 Case on November 4, 2013, Debtor had five principal assets: an approximately 27,000 square foot office building located at Westridge Industrial Parkway, McDonough, Henry County, Georgia; two office/warehouse buildings located on McDonough Parkway, Henry County, Georgia; approximately 130.37 acres of farmland located in Crisp County, Georgia; and a 5 bedroom residential property located on Lake Burton, Clayton, Rabun County, Georgia. On the Petition Date, Debtor's office building, its two office/warehouse buildings and its farm property were all being managed by Debtor, and rented to approximately 11 third-party tenants. Debtor's residential property on Lake Burton was being held for sale.

During the course of this Chapter 11 case, Debtor sought and obtained an Order from this Court authorizing sale of Debtor's 27,000 square foot office building, which Order was entered April 18, 2014 [ECF No. 54]. This sale will

close in May, 2014.   Proceeds of this sale will satisfy the approximately $3,500,000.00 secured claim held by Heritage Bank, and generate funds sufficient to pay approximately $65,000.00 of *ad valorem* taxes owed to the Henry County Tax Commissioner related to the Debtor's office building.  As a result of this sale, Debtor's secured claims on the Petition Date will be reduced from approximately $7,447,000.00 to approximately $3,882,000.00.  Upon consummation of the above sale, Debtor will have 3 institutional bank creditors, one of which holds liens on Debtor's two office/warehouse buildings, a second of which holds a lien on Debtor's 130.37 acre Crisp County farm property; and a third which holds a lien on Debtor's residential investment property on Lake Burton in Rabun County, Georgia.

**B.**     **Events Leading to Filing of Chapter 11.**

Debtor Hudgins Holdings was formed August 7, 2000 as a holding company for the purposes of acquisition, development, and management of investment properties, including commercial property and farm land.  At the time of filing this Chapter 11 Case, on November 4, 2013, Debtor had five principal assets: (i) an approximately 27,000 square foot office building located at Westridge Industrial Parkway, McDonough, Henry County, Georgia (125 Westridge Office Building"); (ii) two office/warehouse buildings on McDonough Parkway, Henry County,

- 2 -

Georgia; (iii) approximately 130.37 acres of farmland located in Crisp County, Georgia; and (iv) and a five bedroom residential property located on Blalock Goldmine Road, on Lake Burton, Clayton, Rabun County, Georgia which property is held for investment ("Blalock/Goldmine Road Residential Property"). On the Petition Date, Debtor's 125 Westridge Office Building, its two office/warehouse buildings and its farm property were all being managed by Debtor, and rented to approximately 11 third party tenants. Debtor's Blalock/Goldmine Road Residential Property on Lake Burton was being held for sale.

Prior to 2013, Debtor's 27,000 square foot 125 Westridge Office Building had maintained an approximately 59.33% occupancy rate. One of Debtor's principal tenants was Georgia State University which rented a large portion of Debtor's 125 Westridge Office Building for classroom and teaching purposes. In approximately August, 2013, Georgia State University terminated its lease. Shortly thereafter, two other tenants terminated their leases. As a result of these terminations Debtor's annual gross rents decreased from approximately $289,198.08 per year to approximately $85,630.08 per year; termination of the Georgia State Lease and the other two leases reduced occupancy at the 125 Westridge Office Building from approximately 59.33% to approximately 31.66%. As a result of this decrease in occupancy, Debtor's 125 Westridge Office Building

- 3 -

did not generate funds sufficient to pay all operating expenses and monthly escrows for *ad valorem* taxes. In addition, after termination of the Georgia State lease, the 125 Westridge Office Building did not generate rent sufficient to pay any debt service, which was approximately $142,800 per year. Although no default had been declared by the secured creditor holding the first priority lien on the 125 Westridge Office Building, and no foreclosure was pending, Debtor filed its Chapter 11 on November 4, 2013, in part to have time and the ability to reorganize the approximately $3,500,000 secured debt, either through replacing the lost rents over a period of time, or through a sale of the property for amounts sufficient to pay the debt and possibly recover some of Debtor's equity.

In addition, the first in priority secured debt on Debtor's five bedroom Blalock/Goldmine Road Residential Investment Property on Lake Burton matured and the secured creditor holding the lien on that property began foreclosure proceedings. Debtor's Chapter 11 was also filed in part to allow Debtor to preserve its equity in this residential investment property.

- 4 -

## ARTICLE II

## DEFINITIONS

**2.1**    **Definitions.**    Applicable definitions contained in the United States Bankruptcy Code, Sections 101 and 1101, are incorporated into this Plan except as modified in this Article II.

**2.2**    **Administrative Claim.**    "Administrative Claim" shall mean a claim for payment of an administrative expense of a kind specified in Section 503(b) of the Code and referred to in Section 507(a)(2) of the Code.

**2.3**    **Allowed Administrative Claim.**    "Allowed Administrative Claim" shall mean all or any portion of an Administrative Claim which has been allowed by a Final Order.

**2.4**    **Allowed Claim.**    "Allowed Claim" shall mean a claim other than an Administrative Claim, and means:

(1)    a Claim scheduled by Debtor and not scheduled as disputed, contingent, or liquidated as to amount, nor as to interest, in accordance with Bankruptcy Rule 3003; or

(2)    a Claim for which a proof of claim has been timely filed with the Court pursuant to the Code and any order of the Court, including an order allowing leave for late filing, after notice of hearing, and as to which no objection

to the allowance of such a Claim has been interposed within the period of limitation fixed by the Code, Bankruptcy Rules, or an order of the Court, or as to which any objection has been overruled by an order which has become a Final Order.

2.5     **Allowed Tax Claim.**  "Allowed Tax Claim" shall mean all or that portion of any tax claim which has become an Allowed Claim.

2.6     **Bar Date.**  "Bar Date" shall mean the applicable Bar Date by which a Proof of Claim, Proof of Interest, Ballot, or Notice must be or must have been filed as established by order of the Court, the Code or the Rules, including the Bar Date Order and the Confirmation Order.

2.7     **Bar Date Order.**  "Bar Date Order" shall mean, as applicable, the confirmation order or any order establishing Bar Dates for filing of Proof of Claim, Proof of Interest, Ballots, or Notices, entered by the Court, as same may have been or may be amended, modified, or supplemented.

2.8     **Business Day.**  "Business Day" shall mean any day, except Saturday, Sunday or any day on which federally chartered banks in Atlanta, Georgia are authorized by law to close.

2.9     **Case.**  "Case" shall mean the pending Chapter 11 case in which this Plan is filed.

**2.10   Claim.** "Claim" shall have the meaning set forth in Section 101(5) of the Code.

**2.11   Code.** "Code" shall mean the Bankruptcy Reform Act of 1978, as modified at Title 11 of the United States Bankruptcy Code, as amended, and effective on the date this Plan is filed with the Court and as amended thereafter

**2.12   Confirmation Date.** "Confirmation Date" shall mean the date on which the Court enters an order confirming Debtors' Plan as filed herein, and as may be amended from time to time.

**2.13   Confirmation Order.** "Confirmation Order" shall mean an order confirming a plan of reorganization in this case entered by the Court pursuant to 11 U.S.C. § 1129.

**2.14   Consummation Date.** "Consummation Date" shall mean the twentieth (20th) Business Day after the confirmation Order becomes a Final Order.

**2.15   Court.** "Court" shall mean the United States Bankruptcy Court for the Northern District of Georgia, Atlanta Division.

**2.16   Creditor.** "Creditor" shall mean any person or entity that is the holder of a Claim against the Debtor.

**2.17   Credit Bid.** "Credit Bid" shall mean the dollar amount bid by a secured creditor:  (i) for the purchase of all or a portion of that secured creditor's

collateral, which collateral is being sold pursuant to this Plan, free and clear of the liens of the secured creditor, and (ii) the amount of which bid, if the high bid for the collateral, shall be credited to that Creditor's Allowed Secured Claim, secured by the collateral which is the subject of the bid, as provided in this Plan.

2.18  **Debtor.**   "Debtor" shall mean Hudgins Holdings, LLC, a limited liability company organized under the laws of the State of Georgia, and the Debtor in Chapter 11, Case No. 13-74158-bem.

2.19  **Debtor's 223 McDonough Parkway Office/Warehouse .**  As used herein, "Debtor's 223 McDonough Parkway Office/Warehouse" shall mean that commercial office/warehouse building containing approximately 30,000 square feet located at 223 McDonough Parkway, McDonough, Henry County, Georgia.

2.20  **Debtor's 363 McDonough Parkway Office/Warehouse .**  As used herein, "Debtor's 363 McDonough Parkway Office/Warehouse" shall mean that commercial office/warehouse building containing approximately 17,400 square feet located at 363 McDonough Parkway, McDonough, Henry County, Georgia.

2.21  **Debtor's Blalock-Goldmine Road Property.**   As used herein, "Debtor's Blalock-Goldmine Road Property" shall mean that tract of real estate constituting approximately .65 acres of improved residential lakeshore property

consisting of a 5 bedrooms single family home, located at 4065 Blalock-Goldmine Road, Clayton, Rabun County, Georgia.

**2.22   Debtor's 130 Acre Crisp County Farm.**  As used herein, "Debtor's 130 Acre Crisp County Farm" shall mean that tract of real estate located in Crisp County, Georgia, constituting approximately 130.37 acres of farm land, and subject to a 9 year lease and option to purchase contract entered into in August, 2011.

**2.23   Determined Fair Interest Rate.**  "Determined Fair Interest Rate" shall mean interest as determined by the Court pursuant to Section 1129(b)(2)(A) of the Code to be sufficient to allow the total stream of payments on the Allowed Secured Claim of the secured creditor to have a value, as of the effective date of the Plan, of at least the value of the secured creditor's interest in the property which is the security for the Secured Creditor's Claim.

**2.24   Distribution Date.**  "Distribution Date" shall mean the date which is the latter of:  (i) the date of payment specified in the Plan; or (ii) the date on which all Claims in a particular class have been finally allowed and determined by the Court so as to allow a determination of the amount of payment to creditors in that class.

- 9 -

**2.25**  **Final Order.**  "Final Order" shall mean an order or judgment, the operation or effect of which has become final by virtue of said order or judgment not having been reversed, stayed, modified, or amended, and the time to appeal from which, or to seek review or rehearing of, which has expired.

**2.26**  **Net Sales Proceeds.**  "Net Sales Proceeds" shall mean the gross sale proceeds of any real estate owned by the Debtor on the November 4, 2013 Petition Date, less and except the following: (i) ad valorem taxes required to be paid to transfer unencumbered title to the property; (ii) normal closing costs required by the contract to be paid by seller, including cost of document preparation, title examination, title insurance, real estate or auctioneer's commissions, courier services and other normal and customary charges; (iii) punch list items required to be paid by seller in order to consummate the sale; and (iv) the dollar amount necessary to pay U.S. Trustee's fees pertaining to the sale.

**2.27**  **Non-Tax Priority Claim.**  "Non-Tax Priority Claim" shall mean any Claim that is entitled to priority in payment pursuant to Section 507(a)(3)(4)(5)(6) or (7) of the Code and that is not a Priority Tax Claim, Administrative Claim or a Secured Claim.

**2.28**  **Person.**  "Person", whether capitalized or not capitalized, shall mean an individual, corporation, partnership, joint venture, association, joint stock

company, trust, estate, unincorporated organization, government (or agency or political Subdivision thereof) or entity.

**2.29    Petition Date.** "Petition Date" shall mean November 4, 2013.

**2.30    Plan.** "Plan" shall mean Debtor's Plan of Reorganization dated May 20, 2014, as modified or amended from time to time as and to the extent permitted in the Plan and in the Code, and by the Court.

**2.31    Priority Tax Claim.** "Priority Tax Claim" shall mean an Allowed Tax Claim entitled to priority under Section 507(a)(8) of the Code.

**2.32    Pro Rata.** With respect to the holders of Allowed Claims in Class ___, the words "*Pro Rata"* shall mean in the same proportion that the Allowed Claim of such Creditor bears to the aggregate Allowed Claims of all Creditors in the same class.

**2.33    Rules.** "Rules" shall mean the Federal Rules of Bankruptcy Procedure.

**2.34    Section 6621 Interest Rate.** "Section 6621 Interest Rate" shall mean that rate of interest charged by the United States for delinquent tax obligations pursuant to 26 U.S.C. § 6621.

**2.35    Unsecured Creditor.** "Unsecured Creditor" shall mean a person, corporation, partnership, or other entity which holds an unsecured non-priority

- 11 -

claim against Debtor, regardless of the Class in which the Creditor participated under this Plan.

## ARTICLE III

## CLASSIFICATION OF CLAIMS AND INTERESTS

3.1     **Class 1 Claims:  Administrative Claims.**  Class 1 Claims consist of all Administrative Claims respecting the Debtor.

3.2     **Class 2 Claims:  Non-Tax Priority Claims.**  Class 2 Claims consist of any Allowed Claims entitled to priority under Section 507(a)(3), (4), (5), (6) or (7) of the Code.

3.3     **Class 3 Claims:  Priority Tax Claims.**  Class 3 Claims consist of all Allowed Claims of government units respecting the Debtor, to the extent such claims are entitled to priority under Section 507(a)(8) of the Code.

3.4     **Class 4 Claims:  Peoples Bank Secured Claims - 223 McDonough Parkway Office/Warehouse.**  Class 4 Peoples Bank Secured Claims consist of the Allowed Secured Claims of Peoples Bank scheduled by Debtor in the amounts of $637,262.68 and $205,841.63, and secured by Debtor's 223 McDonough Parkway Office/Warehouse property.

3.5     **Class 5 Claims:  Peoples Bank Secured Claims - 363 McDonough Parkway Office/Warehouse.**  Class 5 Peoples Bank Secured Claims consist of the

- 12 -

Allowed Secured Claims of Peoples Bank scheduled by Debtor in the amounts of $258,203.28 and $208,264.85 and secured by Debtor's 363 McDonough Parkway Office/Warehouse property.

**3.6** **Class 6 Claim: SFR/RoundPoint Secured Claim.** Class 6 Claim consists of the Allowed Secured Claim held by 2010-3 SFR Venture, LLC scheduled by Debtor as disputed in the amount of $2,242,385.42 and secured by Debtor's Blalock-Goldmine Road property.

**3.7** **Class 7 Claim: South Georgia Banking Corp. Secured Claim.** Class 7 Claim consists of the Allowed Secured Claim of South Georgia Banking Corp. scheduled by Debtor in the amount of $200,786.63, and secured by Debtor's 130 Acre Crisp County Farm.

**3.8** **Class 8 Claim: Henry County Secured Tax Claim.** Class 8 Claim consists of the Allowed Secured Claim held by the Henry County Tax Commissioner in the approximate amount of $104,630.36 for tax years 2011 and 2012 alleged to be due pre-petition by the Henry County Tax Commissioner as set forth on the Henry County Tax Commissioner Proof of Claim [Claim No. 1], after reduction by post-petition payments in the amount of $64,734.94, as a result of the sale of Debtor's 125 Westridge Industrial Parkway Office Building pursuant to the Court's Order entered April 18, 2014. [ECF No. 54.]

**3.9**  **Class 9 Claims:  Unsecured Non-Priority, Non-Insider Claims, Non-Deficiency Claims.**  Class 9 Claims consist of the Allowed Claims which are Unsecured Claims, not entitled to priority, not Claims by insiders as defined in 11 U.S.C. § 101(31), and not deficiency Claims remaining after foreclosure of collateral securing the indebtedness from which the deficiency Claims arose.

**3.10**  **Class 10 Claims:  Unsecured, Non Priority, Non-Insider Deficiency Claims.**  Class 10 Claims consist of the Unsecured Allowed Claims of Creditors which are not entitled to priority, are not Claims by insiders as defined in 11 U.S.C. § 101(31), and are Unsecured Claims resulting from deficiencies generated by pre-petition foreclosures of real estate collateral regarding which Debtor was liable for the secured indebtedness, either as maker or guarantor of the secured indebtedness.

**3.11**  **Class 11 Claims:  Unsecured, Non Priority, Insider Claims.**  Class 11 Claims consist of the Unsecured Allowed Claims respecting any pre-petition loans or advances to Debtor Hudgins Holdings, by Insiders, as defined in 11 U.S.C. § 101(31).

**3.12**  **Class 12 Claims:  Equity Interest Holder Claims.**  Class 12 Claims consist of the holders of equity interests in the Debtor, which interests are presently held by Morris B. Sprayberry, Jr. (5%); Jo A. Hudgins (20%); S. Melissa Hudgins

(12/50%); Erin E. Hudgins (12.5%); Anna K. Hudgins (12.5%); McKenzie K. Hudgins (12.5%); Andrew C. Hudgins (12.5%); and Gerald B. Hudgins (12.5%).

## ARTICLE IV

## TREATMENT OF CLASSES OF CLAIMS OR INTERESTS WHICH ARE NOT IMPAIRED UNDER THE PLAN

4.1    **Class 1 Claims:  Administrative Claims.**  Class 1 Claims are not impaired.  Unless otherwise agreed, a Person holding an Allowed Claim in Class 1 will receive cash equal to the amount of such Allowed Administrative Claim on the latter of: (i) the Consummation Date; or (ii) the date on which such Person becomes a holder of such Allowed Administrative Claim.

4.2    **Class 2 Claims: Non-Tax Priority Claims**.    Class 2 is not impaired.  A Person holding a Class 2 Non-Tax Priority Claim will receive cash equal to the amount of such Allowed Claim on the latter of:  (i) the Consummation Date; or (ii) the date on which such Person becomes a holder of such Class 2 Non-Tax Priority Claim; provided however, any such payments will be reduced, if necessary, by the amount of any payments previously paid such Person for prepetition Claims pursuant to orders of this Court.  No Claims within Class 2 were scheduled, and Debtor does not know of any such Claims.

4.3    **Class 3 Claims: Priority Tax Claims**.  Class 3 Priority Tax Claims are not impaired.  To the extent such Claims are Allowed, the Class 3 Priority Tax

Claims will be paid as follows:  the total amount of the Allowed Claim of each

holder of a Class 3 Priority Tax Claim, plus any additional payment ordered by the

Court as provided herein, shall be paid in equal, consecutive, quarterly

installments, over a period which commences on the first day of the calendar

quarter which is the latter of: (i) the first calendar quarter which commences not

less than 70-days from the Consummation Date, or (ii) the first calendar quarter

which commences not less than 70-days from the Distribution Date, and which

period of payment terminates not later than five (5) years after the date of the entry

of the Order for Relief under Section 301 of the Code, which five (5) year period

ends on November 3, 2018.  In addition to payments of the amount of an Allowed

Priority Tax Claim, the holder of such Allowed Claim shall be paid an amount

ordered by the Court (hereinafter "Interest"), as being necessary to ensure the

holder of such Allowed Claim receives the full value for its Allowed Claim

necessary to justify a deferred payment of the Allowed Claim, as provided herein,

pursuant to Section 1129(a)(9)(C) of the Code.   In the absence of agreement

between the Debtor and the holder of an Allowed Claim regarding the appropriate

Interest rate, the holder of such Allowed Claim shall be paid the Determined Fair

Interest Rate set by the Court.

## ARTICLE V

## TREATMENT OF CLASSES OF CLAIMS OR INTERESTS WHICH ARE IMPAIRED UNDER THE PLAN

**5.1    Class 4 Claims:  Peoples Bank Secured Claims – 223 McDonough Parkway Office/Warehouse.**    The Class 4 Peoples Bank Secured Claims are impaired and shall be treated as follows:

**A.    Retention of Existing Lien.**  Peoples Bank shall retain its lien on the 223 McDonough Parkway Office/Warehouse evidenced by the Security Deed held by Peoples Bank and recorded at Deed Book 7511, Pages 302-306, Henry County, Georgia Real Estate Records as modified by documents recorded from time to time including Modification Agreements dated January 8, 2013 recorded at Deed Book 12979, Pages 215-217 and Deed Book 12979 Pages 212-214, Henry County, Georgia Real Estate Records.

**B.    Existing Indebtedness.**    The Peoples Bank Security Deed secures two Notes, to wit:

(1)    Note 31472 dated January 8, 2013 in the original principal amount of $657,932.83 having a maturity date of November 8, 2015 and an outstanding principal balance of $637,262.28 on the Petition Date.

- 17 -

(2)    Note 31473 dated January 8, 2013 in the original principal amount of $205,841.63 having a maturity date of November 8, 2015 and an outstanding principal balance of $205,841.63 on the Petition Date.

C.    **Application of Post-Petition Cash Collateral.** Application of post-petition cash collateral remaining after payment of approved operating expenses shall be applied as follows: to Note 31472 having a present principal balance of $657,933.83, which payment shall be credited to monthly payments due in the amount of $4,384.11 commencing November, 2013 and continuing through the Confirmation Date, and which payments shall be credited in the manner and amount same would have been credited had the payments been made on the monthly due dates, *i.e.,* first to interest at the contract, non-default rate and next to principal;

D.    **Extension of Maturity Date on Note 31472.**    Amounts remaining due on Note 31472 on the Consummation Date shall continue to be paid in equal monthly installments of $4,384.11, which shall be credited first to interest at the rate established in the existing Note, and second to principal.  Monthly payments shall continue to be made until the modified and extended Maturity Date. The Maturity Date of Note 31472 shall be modified and extended to November 8, 2018.

E.   **Extension of Maturity Date on Note 31473.**   The terms of Note 31473 shall remain the same except that the Maturity Date of Note 31473 shall be extended to November 8, 2018.

5.2   **Class 5 Claims:  Peoples Bank Secured Claims – 363 McDonough Parkway Office/Warehouse.**   The Class 5 Peoples Bank Secured Claims are impaired and shall be treated as follows:

A.   **Retention of Existing Lien.**   Peoples Bank shall retain its lien on the 363 McDonough Parkway Office/Warehouse evidenced by the Security Deed held by Peoples Bank and recorded at Deed Book 7493, Pages 326-330, Henry County, Georgia Real Estate Records as modified by documents recorded from time to time including Modification Agreements dated January 8, 2013 recorded at Deed Book 12979, Pages 218-220 and Deed Book 12979, Pages 221-223, Henry County, Georgia Real Estate Records.

B.   **Existing Indebtedness.**   The Peoples Bank Security Deed secures two Notes, to wit:

(1)   Note 31474 dated January 8, 2013 in the original principal amount of $265,792.88 having a maturity date of November 8, 2015 and an outstanding principal balance of $258,203.28 on the Petition Date.

- 19 -

(2)    Note 31475 dated January 8, 2013 in the original principal amount of $208,264.85 having a maturity date of November 8, 2015 and an outstanding principal balance of $208,264.85 on the Petition Date.

**C.    Application of Post-Petition Cash Collateral.**  Application of post-petition cash collateral remaining after payment of approved operating expenses shall be applied as follows: to Note 31474 having a present principal balance of $265,792.68, which payment shall be credited to monthly payments due in the amount of $1,771.10 commencing November, 2013 and continuing through the Confirmation Date, and which payments shall be credited in the manner and amount same would have been credited had the payments been made on the monthly due dates, *i.e.,* first to interest at the contract, non-default rate and next to principal;

**D.    Extension of Maturity Date on Note 31474.**    Amounts remaining due on Note 31474 on the Consummation Date shall continue to be paid in equal monthly installments of $1,771.10, which shall be credited first to interest at the rate established in the existing Note, and second to principal.  Monthly payments shall continue to be made until the modified and extended Maturity Date. The Maturity Date of Note 31474 shall be modified and extended to May 8, 2017.

      **E.**    **Extension of Maturity Date on Note 31475.**  The terms of Note 31475 shall remain the same except that the Maturity Date of Note 31475 shall be extended to November 8, 2018.

      **5.3**    **Class 6 Claim: SFR/RoundPoint Secured Claim.**  The Class 6 SFR/RoundPoint Secured Claim is impaired and shall be treated as follows:

      **A.**    **Settlement Alternative.**  Debtor will attempt to negotiate a settlement of the SFR/RoundPoint Secured Claim.  Thus far, SFR/RoundPoint has not expressed any interest in resolving the SFR/RoundPoint Secured Claim by agreement.  In the event Debtor and SFR/RoundPoint are able to resolve terms for restructure and repayment of the SFR/RoundPoint Secured Claim, the settlement will be reflected by amendments to this Plan filed prior to the Confirmation Hearing or by an order of Court.

      **B.**    **Cram-Down Treatment.**  In the event that Debtor is not able to reach agreement regarding the treatment of the Class 6 SFR/RoundPoint Secured Claim, the Claim shall be satisfied by a specific request of Debtor for treatment pursuant to 11 U.S.C. § 1129(b).  Unless some other request for treatment is made prior to conclusion of the Confirmation Hearing, the request for treatment will be as follows:

- 21 -

1.  **Retention of SFR/RoundPoint Lien.**  The Holder of the Class 6 SFR/RoundPoint Secured Claim, if Allowed, will retain its lien on all of the collateral it held on the Petition Date, pending payment in the manner set forth herein.

2.  **Determination of Allowed Claim.**  On or before the Confirmation Date the amount of the Allowed Secured Claim held by SFR/RoundPoint will be determined by agreement or by order of this Court, including any valuation required under Section 506 of the Code.

3.  **Payment of Interest on Allowed Claims.**  Commencing on the first month anniversary of the Confirmation Date and continuing for 24 consecutive months, Debtor shall pay interest on the SFR/RoundPoint Allowed Claim (including any Post-Petition interest allowed by Court Order) at the rate of 4% *per annum* or at the "Determined Fair Interest Rate" in the event the holder of the SFR/RoundPoint Secured Claim contests the proposed 4% *per annum* interest rate.

4.  **Lease of Debtor's Blalock-Goldmine Road Property.**  Debtor will enter into a Lease, Right of First Refusal and Option Agreement ("Lease/Option Agreement") with Peachtree Securities Company ("Lessor") respecting Debtor's Blalock-Goldmine Road Property pursuant to the terms of a

- 22 -

Lease/Option Agreement to be filed on or before a hearing on Debtor's Disclosure Statement pertaining to this Plan which Lease/Option Agreement will include terms as follows:

       *i)*    ***Lease Term:***    24 months, subject to termination as described below.

       *ii)*    ***Lease Payments:*** The Lease/Option Agreement will provide for payment on the first day of each month, commencing on the first month anniversary of the Confirmation Date and continuing for 24 consecutive months of an amount which equals the sum of 4% *per annum* of the outstanding principal balance of the SFR/RoundPoint Allowed Claim plus the amount necessary to make *pro rata* monthly escrows for escrow of *ad valorem* taxes and insurance coming due during each calendar year ending or beginning during the Lease/Option Agreement term.   Provided however, in the event the Court determines that interest must be paid on the SFR/RoundPoint Claim at a Determined Fair Interest Rate which exceeds 4% *per annum*, the Lease/Option Agreement payment will be increased from 4% to the amount which equals the Determined Fair Interest Rate.

       *iii)*    ***Right of First Refusal:*** During the first seventeen (17) months of the Lease/Option Agreement, the lessee shall have rights as follows:  If

- 23 -

lessor obtains a *bona fide* offer to sell the Blalock-Goldmine Road Property at a price sufficient or more than sufficient to obtain a release of the Deed to Secure Debt and other security documents securing the SFR/RoundPoint Allowed Claim, and lessor decides to accept the offer, lessor shall first present to lessee a true and correct copy of a contract executed by the proposed Purchaser ("Proposed Sale Contract").  Lessee shall have 15 business days from receipt of the copy of the Proposed Sale Contract within which to give notice of lessee's agreement to purchase the Blalock-Goldmine Road Property on the same terms set out in the Proposed Sale Contract ("Lessee's Purchase Notice") except that lessee shall not be required to close in less time than 30 days after lessee's timely delivery of Lessee's Purchase Notice; rather, lessee shall have the longer of 30 days from delivery of the Lessee's Purchase Notice or the closing date specified in the Proposed Sale Contract within which to close the sale.  Delivery of Lessee's Purchase Notice shall result in a binding purchase contract between lessee and lessor on the same terms as set out in the Proposed Sale Contract, except for the provision set out immediately above respecting the Closing Date.  If lessor gives notice of a Proposed Sale Contract and closes the purchase of the Blalock-Goldmine Road Property, whether to the proposed purchaser named in the Proposed Sale Contract or pursuant to lessee's right of first refusal the Lease/Option Agreement terminates

- 24 -

as of the Closing Date.  If Lessor does not close a sale of the Blalock-Goldmine Road Property as a result of the Proposed Sale Contract, the Lease/Option Agreement shall continue in effect until the earlier of any closing of sale pursuant to the terms of any other Proposed Sale Contract, or the specified termination date of the Lease/Option Agreement.

*iv)*    ***Option to Purchase:***  Commencing with the first day of the 18th month from the effective date of the Lease and continuing for the remaining term of the Lease, the Lessee shall have the option during the remaining term of the Lease to purchase the Blalock-Goldmine Road Property for the amount of the SFR/RoundPoint Allowed Claim minus any reductions as a result of post-confirmation payments and plus any additions as a result of non-payment of interest at the post-confirmation rate agreed by the parties or the Determined Fair Interest Rate in the absence of agreement by the parties.

**5.**    ***Auction of Debtor's Blalock-Goldmine Road Property.***

If The SFR RoundPoint Allowed Secured Claim is not paid by the 24th Month after Consummation Date, the Blalock-Goldmine Road Property shall be sold at auction pursuant to the procedure below.

*(i)*    ***Auction Free and Clear of Liens***.  In the event the SFR/RoundPoint Allowed Secured Claim has not been fully paid by the end of 24

- 25 -

months from the Consummation Date, Debtor shall retain a reputable auctioneer familiar and experienced in auctioning property similar to Blalock-Goldmine Road Property, which auctioneer will commit to advertise and publicize the auction of Debtor's Blalock-Goldmine Road Property in a commercially reasonable way to generate interest in sale of the Property.  The public notice and advertisement of auction shall proceed for not less than 60 days preceding the auction of Debtor's Property.  Debtor will furnish SFR/RoundPoint notice of the proposed auctioneer. In the event SFR/RoundPoint does not approve the proposed auctioneer, Debtor and SFR/RoundPoint shall be entitled to submit proposed auctioneers to the Court whereupon the Court shall appoint an auctioneer after notice to both Debtor and SFR/RoundPoint, and hearing.   Debtor shall furnish the holder of the SFR/RoundPoint Allowed Claim, copies of all advertisements and notices disseminated by the auctioneer.  The auction of Debtor's Blalock-Goldmine Road Property shall occur before the end of 27 months from the Consummation Date. The closing of the sale of Debtor's Property shall occur within 30 days from conclusion of the auction.  The auction of Debtor's Property shall be advertised as an auction free and clear of liens, and the title delivered to the purchaser at auction shall be free and clear of liens.

(ii)    ***SFR/RoundPoint's      Right      to      Credit      Bid***.
SFR/RoundPoint shall have Credit Bid rights as provided in Sections 363(k) and 1129 (b)(2)(A)(ii) of the Code.

(iii)    ***Application of Net Sales Proceeds from third party purchase***.  In the event of a sale of Debtor's Blalock-Goldmine Road Property to a Person other than the holder of the Class 6 SFR/RoundPoint Allowed Claim, all Net Sales Proceeds resulting from the sale of Debtor's Property shall be paid to the holder of the Class 6 SFR/RoundPoint Allowed Claim, up to the full amount of the SFR/RoundPoint Allowed Claim, said payments being applied first to the outstanding principal balance of the SFR/RoundPoint Allowed Claim, after which said payment shall be applied to any interest which has accrued and remains unpaid on the principal balance of the SFR/RoundPoint Allowed Claim.

**5.4    Class 7 Claim:  South Georgia Banking Company Secured Claim.**
The Class 7 Claim is impaired and shall be treated as follows:

**A.    Extension of Maturity Date and Amortization Schedule of Existing Note Held by South Georgia Banking Company.**  South Georgia Banking Company presently holds a Promissory Note dated June 10, 2012 in the original principal amount of $220,746.24 providing for annual payments of principal and interest in the amount of $31,156.22 with interest accruing at 1.75%

*per annum* above an index identified as "Wall Street Journal Prime Rate", which Note has a maturity date of June 10, 2015.  The Note is secured by Debtor's 130-acre Crisp County farm which Debtor acquired by Warranty Deed which included an assumption of the indebtedness due South Georgia Banking Company under the above referenced Note and its predecessor Notes ("Crisp County Farm Note"). The indebtedness evidenced by the Crisp County Farm Note will be extended such that the Maturity Date of the indebtedness will be extended to June 10, 2020. Interest will continue to accrue at the rate specified in the Crisp County Farm Note, *i.e.,* 1.75% *per annum* above the Index Rate stated in the Note.  Annual payments of principal and interest will continue to be made on June 10 of each year in the amount of $31,156.22 until the earlier of payment of the Crisp County Farm Note or June 10, 2020.

**B.**    **Retention of Security.**  South Georgia Banking Company shall continue to retain its existing security including the 130-acre Crisp County Farm.

**C.**    **Assumption of Crisp County Farm Lease as Set Forth in Section 6.1.**  As set forth in Section 6.1 below, Debtor will assume that lease between Hudgins Holdings, LLC and Council & Sons Farms, LLC, dated August, 2011 providing for minimum lease payments in the amount of $50,000 per year

payable on June 15 of each year in the remaining Lease term, *i.e.,* June 15, 2014 through June 15, 2020 ("Crisp County Farm Lease").

        D.    **<u>Application of Lease Payments</u>.**  Debtor will continue to apply $31,156.22 of the annual Crisp County Farm Lease payments to the payment of debt constituting the Class 7 South Georgia Banking Company Secured Claim, and, in addition, will pay from such lease payments, *ad valorem* taxes assessed against the 130-acre Crisp County Farm, subject to any reimbursement rights from lessee to lessor as set forth in the Crisp County Farm Lease.

    5.5    **<u>Class 8 Claim:  Henry County Secured Tax Claim</u>.**  The Class 8 Henry County Secured Tax Claim is impaired and shall be treated as follows:

        A.    **<u>Payment Terms</u>.**  Except as provided in subpart B below respecting some provisions pertaining to payment of *ad valorem* taxes, Allowed Claims of Holder of all Class 8 Henry County Secured Tax Claims shall be treated as follows:  The holder of the Class 8 Claim shall retain its tax lien, subject to the provisions set forth below.  The total amount of the Allowed Claim of each holder of a Class 8 Secured Tax Claim, plus any additional payment ordered by the Court as provided herein, shall be paid in equal, consecutive, quarterly installments, over a period which commences on the first day of the calendar quarter which is the latter of: (i) the first calendar quarter which commences not less than 70 days from

the Consummation Date, or (ii) the first calendar quarter which commences not less than 70 days from the Distribution Date, and which period of payment terminates not later than 5 years after the date of the entry of the Order for Relief under Section 301 of the Code, *i.e.*, November 3, 2018.  In addition to payments in the amount of the Henry County Allowed Tax Claim, the holder of such Allowed Tax Claim shall be paid Interest in the amount agreed by the parties, or at the Determined Fair Interest Rate computed daily on the unpaid balance of the amount of the Allowed Secured Tax Claim outstanding, in the event the parties are not able to agree on an interest rate.  Payments of interest shall be made simultaneously with quarterly payments on the Allowed Secured Tax Claim.

**B.** **Additional Provisions Related to Payment of *Ad valorem* Taxes.**

(1)   Pro rata applications of tax payments among tax parcels.  So long as more than one tax parcel is subject to pre-petition Henry County Allowed Claims, payments on the Henry County Allowed Claims shall be credited *pro rata* to the amount of tax outstanding on each of the tax parcels included in the Henry County Allowed Claim held by such claimant.

(2)   Prepayment on sale of an entire tax parcel.  In those instances in which Debtor sells property which constitutes an entire tax parcel constituting part, but not all, of the Henry County Allowed Claim the Debtor shall pay at the time of

sale the dollar amount of taxes remaining unpaid as related to said tax parcel, after the *pro rata* crediting of tax payments received by the holder of the Henry County Allowed Claim pursuant to subsection A above.

**5.6    Class 9 Claims:   Unsecured, Non-Priority, Non-Insider, Non-Deficiency Claims.**  All Allowed Class 9 Unsecured, Non-Priority, Non-Insider, Non-Deficiency Claims shall be paid as follows:

**A.    Convenience Payment – One Hundred Cents (100¢) on the Dollar Up to $500.00.**  All Creditors holding allowed Class 9 Unsecured Claims in an amount less than $500.00 will be paid 100¢ on the dollar of their Allowed Claim, which payment will be made within 30 days from the Consummation Date.  Any Person or entity holding an Allowed Class 9 Unsecured Claim in excess of $500.00, which claimant desires to accept $500.00 in satisfaction of its Allowed Claim, will likewise be paid $500.00 in satisfaction of that claimants' Claim within 30 days from the Consummation Date.  In the event a claimant holding a Class 9 Unsecured Claim in excess of $500.00 desires to accept $500.00 in satisfaction of its Claim, the claimant must affirmatively elect treatment under this Section 5.6(A) on its ballot.

**B.    Class 9 Claimants Not Subject to or Electing to Be Subject to the Convenience Payment Under Section 5.7(A).**  All holders of Allowed Class 9

- 31 -

Claims not subject to or electing to be subject to treatment under Section 5.6(A) above shall receive payment in an amount which is the *Pro-Rata* equivalent of the amounts received by holders of Class 11 Unsecured, Non-Priority, Non-Insider, Deficiency Claims.

**5.7** **Class 10 Claims: Unsecured, Non-Priority, Non-Insider, Deficiency Claims.**  Debtor is negotiating with the Class 10 Claimant in an effort to reach an agreement regarding an amount to be paid in order to obtain the Class 10 Claimants' consent to Debtor's Plan which provides that existing equity holders will retain their interests.

In the event Debtor and the holders of the Class 10 Claims cannot reach agreement on a treatment of that Claim, Debtor will amend its Plan and provide for extinction of existing equity interests and issuance of new equity interests in exchange for a contribution which will result in a Plan which can be confirmed as fair and equitable under 11 U.S.C. § 1129(b)(2)(B)(ii) of the Code.

**5.8** **Class 11 Claims: Unsecured, Non-Priority, Insider Claims.**  The Class 11 Unsecured, Non-Priority, Insider Claims shall be subordinated to the payment of all Allowed Claims in Debtor's Chapter 11 Case, pursuant to the payment provisions of this Plan.  Upon payment of all Allowed Claims in Debtor's Chapter 11 Case pursuant to the provisions of this Plan, the holders of Class 11

Unsecured, Non-Priority, Insider Claims shall be paid an amount on their Allowed

Claims which equals the percentage of payment received by the holders of the

Class 10 Unsecured, Non-Priority, Non-Insider Deficiency Claims.

    **5.9**    **Class 12 Claims:  Equity Interest.**  The Class 13 Claims consist of

the Equity Interests in Debtor.

    In the event Settlement can be reached with the holders of the Class 10

Claims, the holders of equity interest will retain their interest in the Debtor.  If

settlement cannot be reached with the holder of the Class 10 Claims, the existing

equity Interests will be terminated and new equity interests will be issued to a

third-party in exchange for a capital contribution which will make possible a

payment to the holder of the Class 10 Claims in a manner sufficient to satisfy the

requirements for fair and equitable treatment under 11 U.S.C. § 1129(b)(2)(B)(ii)

of the Code.

## ARTICLE VI

## TREATMENT OF EXECUTORY CONTRACTS

    **6.1**    **Assumption of Executory Contracts.**  Debtor will assume executory

contracts expressly identified on Exhibit "B" attached hereto as said Exhibit "B"

may be amended pursuant to Debtor filing a "Notice of Assumption of Executory

Contracts" prior to the Confirmation Date.  In addition, Debtor will assume such

other executory contracts as allowed or ordered by this Court as a result of motions filed by any Party in Interest prior to the Confirmation Date.  Any contract which is listed on Exhibit "B" as may be amended by any Notice of Assumption of executory contracts, which Notice is filed pursuant to this Plan, shall become effective only if this Plan, as amended and modified prior to the Confirmation Date is confirmed by Final Order of this Court.

     **6.2**    **Rejection.**   Except for executory contracts listed on Exhibit "B" attached hereto as same may be amended by a Notice of Assumption of Executory Contracts filed by Debtor prior to the Confirmation Date, all other executory contracts of Debtor shall be deemed automatically rejected; provided however, this rejection shall become effective only if this Plan, as modified and amended prior to the Confirmation Date shall be confirmed.  Any claims for damages resulting from rejection of executory contracts, which contracts are not the subject of a motion filed prior to the Confirmation Date, shall be filed within 30 days from the Confirmation Date.  Any claims for damages resulting from rejection of executory contracts, which are the subject of a motion respecting assumption or rejection, shall be filed within the latter of: (i) 30 days from the order authorizing rejection, or (ii) 30 days from the Confirmation Date, unless this Court has specifically set some other time for filing a proof of claim for a specific executory contract.  A

- 34 -

claim for damages resulting from rejection of executory contracts shall be treated as a claim of a Class 6 Unsecured Creditor.

## ARTICLE VII

## DISCHARGE; VESTING; INJUNCTION

**7.1    Discharge.**  Except as otherwise provided in the Plan, or in the Order confirming the Plan, the confirmation of the Plan acts as a discharge of the Debtor, effective immediately, of any "debt" (as that term is defined in Section 101(12) of the Code), whether reduced to judgment or not, liquidated or unliquidated, contingent or non-contingent, asserted or unasserted, fixed or not, matured or unmatured, disputed or undisputed, legal or equitable, know or unknown, that arose from any agreement, obligation, act, event or happening in which any of the Debtors participated, prior to the Confirmation Date.

**7.2    Vesting.**  Confirmation of the Plan shall have effects which include the following:  Effective on the Confirmation Date, all property of Debtor which remains titled in or otherwise owned by Debtor shall vest in Debtor, free and clear of all liens, claims, encumbrances, penalties, assessments, and other interests except as may otherwise be specifically set forth in this Plan.  This Property is described on Exhibits A-1, A-2, A-3, and A-4 attached hereto.

    **7.3**    **Injunction.**  The Order confirming the Plan, or a separate order of the Court, will include provisions permanently enjoining all persons holding any Claims on or after the Confirmation Date, from taking any action to enforce rights, or alleged rights, against the Debtor or against any assets of the Debtor, or any collateral in which said claimants assert rights, which rights, or alleged rights, are inconsistent with the rights of secured or unsecured creditors of the Debtor, or other claimants as set out in this Plan, as amended and modified prior to the Confirmation Date, and confirmed by this Court.

**ARTICLE VIII**

**MODIFICATION OF PLAN**

    **8.1**    **Reservation of Right to Amend Plan.**  Debtor reserves the right, pursuant to Section 1127(a) of the Code, to amend or modify the Plan prior to the Confirmation of the Plan; after Confirmation of the Plan, Debtor reserves the right to modify the Plan as allowed by Section 1127(b) of the Code, and applicable law.

## ARTICLE IX

## MANNER AND MEANS OF EXECUTION OF PLAN

The following additional provisions shall apply regarding the operation of Debtor's business and the administration of this Plan:

(1)    Debtor shall remain in control of its assets during the entire administration of this Plan.

(2)    Debtor will perform its obligations as Lessor under those leases assumed and listed on Exhibit "B" attached hereto, as amended by any Notice of Assumption of Executory contracts, which assumed contracts shall include, but are not limited to, that document denominated "Lease Purchase Agreement" dated August 2011, executed by Debtor and Council & Sons Farms, LLC pertaining to Debtor's 130-acre Crisp County Farm, and those tenant leases in effect on Debtor's properties, on the Confirmation Date.

(3)    Morris B. Sprayberry, Jr. shall continue as the manager of Debtor, and shall continue in control of the Debtor.

(4)    Debtor, as directed by its managing manager, Morris B. Sprayberry, Jr., or such other managing member as elected by the Debtor in substitution of Morris B. Sprayberry, Jr., shall retain full authority to

- 37 -

object to Claims, amend and modify this Plan, and administer the assets of the Debtor in conjunction with consummation and execution of this Plan.

(5)    Debtor, acting through Morris B. Sprayberry, Jr. the managing member of Debtor, or such other manager elected by Debtor, shall commence any litigation necessary to realize on Claims constituting assets of the Estate.

(6)    Debtor will operate Debtor's Properties as commercial warehouse space and leased farmland for the purpose of generating sums to contribute to payments required by Debtor's Plan.

(7)    During the 24 month period of interest payments to the holder of the SFR/RoundPoint Class 6 Claim, Debtor will pursue refinancing of the SFR/RoundPoint Allowed Secured Claim and will pursue sale of the Blalock-Goldmine Road Property in order to pay the SFR/RoundPoint Allowed Secured Claim in full.

(8)    Debtor will obtain a loan or capital infusion sufficient to pay Allowed Unsecured Claims in Classes 9 and 10, which loan or capital infusion shall be obtained on or before the Confirmation Date.

# ARTICLE X

## **RETENTION OF JURISDICTION**

The Court shall retain jurisdiction, notwithstanding entry of the Order confirming the Plan and notwithstanding occurrence of the Consummation Date, for the following purposes:

(1)    to enforce all causes of action which exist of behalf of the Debtor or any other entity pursuant to the provisions of this Plan;

(2)    to enter orders and injunctions and restraints to enforce the provisions of the Plan;

(3)    to determine claims asserted under Section 507(a)(2) of the Code, including claims for compensation and reimbursement of expenses;

(4)    to determine any disputed claims;

(5)    to enter orders regarding interpretation of the Plan, or any document created in connection with the Plan;

(6)    to conduct hearings and to enter orders modifying the Plan pursuant to Article VIII of this Plan and the Code;

(7)    to determine any and all applications, claims, adversary proceedings, contested or litigated matters pending on the Confirmation Date;

(8)     to determine any applications for rejection or assumption of executory

contracts or leases, and to determine claims resulting from rejection of

executory contracts and leases; and

(9)     to allow, disallow and estimate, liquidate or determine any claims

against the Debtor, including tax claims, and to enter and enforce any

order requiring the filing of such claim before a particular date.

Dated this 20th day of May, 2014.

**HUDGINS HOLDINGS, LLC, Debtor**

By:     */s/ Morris B. Sprayberry, Jr.*
        Morris B. Sprayberry, Jr., Managing
        Member

*/s/ Jimmy L. Paul*
JIMMY L. PAUL
*Georgia Bar No. 567600*

*Counsel for Debtor Hudgins Holdings, LLC*

Chamberlain, Hrdlicka, White, Williams & Aughtry
191 Peachtree Street, N.E., 34th Floor
Atlanta, Georgia  30303
(404) 659-1410
(404) 659-1852 (facsimile)
jimmy.paul@chamberlainlaw.com

- 40 -