# EXHIBIT "B"

Case 13-74158-bem    Doc 155-2    Filed 03/08/16    Entered 03/08/16 16:54:19    Desc
Exhibit B    Page 1 of 16

# LEASE AND OPTION AGREEMENT FOR
# RESIDENTIAL PROPERTY AT 4065 BLALOCK-GOLDMINE ROAD,
# CLAYTON, RABUN COUNTY, GEORGIA

**THIS LEASE AND OPTION AGREEMENT** ("Lease/Option Agreement"), made this ____ day of March, 2016 between Hudgins Holdings, LLC, as Debtor-in-Possession in that case pending in the United States Bankruptcy Court, Northern District of Georgia, Atlanta Division, Chapter 11, Case No., 13-74158-BEM ("Lessor") and Peachtree Securities Company ("Lessee").

**1)    Recitals.**

    **(a)    Hudgins Holdings, LLC.**  As used herein, the words "Hudgins Holdings, LLC" shall mean the limited liability company organized under the laws of Georgia.  Hudgins Holdings, LLC is the Debtor-in-Possession in the Hudgins Holdings, LLC Chapter 11 case identified below.

    **(b)    Peachtree Securities Company.**  As used herein, the words "Peachtree Securities Company" shall mean that corporation organized under the laws of Georgia.

    **(c)    Hudgins Holdings Chapter 11 Case.**  As used herein, the words "Hudgins Holdings Chapter 11 Case" shall mean and refer to that Chapter 11 case pending in the name and style: *Hudgins Holdings, LLC*, United States Bankruptcy Court, Northern District of Georgia, Chapter 11, Case 13-74158.

    **(d)    Bankruptcy Court.**  As used herein, the words "Bankruptcy Court" shall mean and refer to the United States Bankruptcy Court for the Northern District of Georgia, Atlanta Division, which court is administering the Hudgins Holdings Chapter 11 Case.

    **(e)    Blalock-Goldmine Road Property.**  As used herein, the words "Blalock-Goldmine Road Property" shall mean and refer to that residential investment property located at 4065 Blalock-Goldmine Road, City of Clayton, Rabun County, Georgia, which residential investment property is located on that tract of land described on Exhibit "A" attached hereto.

**(f) Approval Date.** As used herein, the words "Approval Date" shall mean and refer to the date on which the Bankruptcy Court enters an order in the Hudgins Holdings Chapter 11 Case, approving this Lease/Option Agreement for the Blalock-Goldmine Road Property, as of the date on which the Bankruptcy Court's order approving this agreement becomes a final order as a result of no notice of appeal being filed from such order and no post-hearing motion to rescind or modify the Bankruptcy Court's order approving this document, having been filed within the period allowed for filing a notice of appeal.

**(g) SFR/RoundPoint Security Deed.** As used herein the words "SFR/RoundPoint Security Deed" shall mean and refer to that deed to secure debt made by Hudgins Holdings to Rockbridge Commercial Bank, recorded at Deed Book L32, Pages 211-222, Rabun County, Georgia Real Estate Records which Deed to Secure Debt was assigned by the Federal Deposit Insurance Corporation, as Receiver for Rockbridge Commercial Bank to 2010-3 SFR Venture, LLC by assignment recorded May 2, 2011 at Deed Book E37, Pages 561-564, Rabun County, Georgia, Real Estate Records.

**2) Rental of Blalock-Goldmine Road Property.**

Lessor agrees to rent to Lessee, the Blalock-Goldmine Road Property for the consideration and all other terms and conditions as hereinafter stated.

**3) Term.**

Lessee shall hold its interest as tenant of the Blalock-Goldmine Road Property for a term of twenty four (24) months, beginning on the Approval Date and ending on the last day of the month which is the twenty-fourth (24th) month after the Approval Date.

**4) Rent.**

Lessee shall pay rent to the Lessor monthly, in advance, at a rate of $7,478.00 per month, during the Lease/Option Agreement Term, on the first (1st) day of each month, at the address set forth herein below. Mailing the rent does not constitute payment. Rent is due on the first (1st), late on the eleventh (11th) or thereafter and must be received at the address set forth herein to be considered paid. If the Approval Date occurs on a date of the calendar month other than the first (1st) day of a month, rent for the first (1st) calendar month shall be pro-rated by dividing $7,478.00 by the number of days remaining in the first (1st) calendar

month of this Lease/Option Agreement, during the period from the Approval Date until the end of the first (1st) calendar month.

**5)  Additional Payments.**

In addition to payment of monthly rent as set forth in paragraph 4 above, Lessee shall also pay additional amounts as follows:

   **(a)  Ad Valorem Tax Escrow:** Each month Lessee shall pay Lessor a dollar amount constituting one-twelfth (1/12th) of City of Clayton, Georgia and Rabun County, Georgia, *ad valorem* taxes assessed against the Blalock-Goldmine Road Property for the calendar year in which the monthly rental payment is made; and

   **(b)  Hazard Insurance Premium:** Each month Lessee shall pay Lessor one-twelfth (1/12) of the hazard insurance premium pertaining to the Blalock-Goldmine Road Property during a twelve (12) month period which includes the month in which rental payment is made.

These monthly tax payments for *ad valorem* tax escrows and insurance escrows shall be made by checks, wire transfers, or other matters of payment separate from payment of monthly rent amounts required by paragraph 4 above.

**6)  Late Charges.**

All rental payments hereunder shall be due and payable on the first (1st) day of each month. Any rental payment not received by the lessor by 5:00 p.m. on the tenth (10th) day of each month in which rent is due shall result in a late charge of $250.00, for each occurrence.

**7)  Security Deposit.**

Lessee has paid a security deposit in the amount of $10,000.00 to insure the full and faithful performance by Lessee of all terms and conditions of this Agreement. At the discretion of the Lessor, the security deposit may be applied against the costs of Lessor repairing damages to premises determined necessary at vacancy or termination of tenancy due to carelessness, negligence, accident or abuse on the part of Lessee, household members, guests or invitees. The security deposit shall also apply to the actual damages caused to Lessor by abandonment by Lessee and for outstanding late charges in delinquent rental. Such application does

not relieve Lessee of liability for damages or costs in excess of security deposit. Lessee agrees that upon Lessor's sale of the Blalock-Goldmine Road Property Lessor may assign Lessee's security deposit to the Purchaser under the laws of the State of Georgia. All of the applicable portions of the security deposit will be returned to Lessee after possession has been relinquished, provided there is no outstanding claim against Lessee, the Blalock-Goldmine Road Property is left clean, and all keys are returned to Lessor.

**8)    Repairs.**

Lessee acknowledges that it has inspected the Blalock-Goldmine Road Property and accepts the condition of the Blalock-Goldmine Road Property, as is. During the term of this Lease/Option Agreement, Lessee agrees to maintain the Blalock-Goldmine Road Property in as good a condition as exists on the Approval Date, less normal wear and tear. Lessor will have the right to inspect the interior of the Blalock-Goldmine Road Property on three (3) days' notice, for the purpose of ascertaining whether the Blalock-Goldmine Road Property is being properly maintained by Lessee and whether any repairs are necessary. Lessee agrees to commence any repairs of the interior of the Blalock-Goldmine Road Property promptly after receipt of any written notice from Lessor, and agrees to complete such repairs within a reasonable time. Notwithstanding what is set out above in this paragraph, nothing in this paragraph shall impose on Lessee a duty to repair the roof, exterior walls, foundation, or support of the Blalock-Goldmine Road Property.

**9)    Termination of Term.**

This Lease/Option Agreement may be terminated by one or both parties in the events and at the times set forth below:

**(a)** Lessor may terminate this Lease/Option Agreement upon completion by Lessor of a sale of the Blalock-Goldmine Road Property at any time during the first (1st) seventeen (17) months of this Lease/Option Agreement;

**(b)** Lessee may terminate this Lease/Option Agreement at any time between the commencement of the eighteenth (18th) month of this Lease/Option Agreement and the end of the twenty-fourth (24th) month of this Lease/Option Agreement, upon Lessee's exercise of rights under the Option to purchase the Blalock-Goldmine Road Property and the required payment to pay to SFR/RoundPoint, the dollar amount necessary to satisfy claims asserted by

SFR/RoundPoint and obtain a release of the Blalock-Goldmine Road Property from liens held by SFR/RoundPoint.

**(c)** In the event this Lease/Option Agreement is not terminated pursuant to paragraphs (a) or (b) as set forth immediately above, this Lease/Option Agreement will terminate automatically at the end of the twenty-fourth (24th) month of this Lease/Option Agreement.

**10) Sublet and Assignment.**

Lessee may not sublet the Blalock-Goldmine Road Property or assign this Lease/Option Agreement without a specific written consent executed by Lessor. This Lease/Option Agreement shall create the relationship of Lessor and Lessee between the parties hereto; no estate shall pass out of Lessor.

**11) Right of Access, Signage.**

Lessor shall have the right of access to the Blalock-Goldmine Road Property for inspection, repairs and maintenance during reasonable hours on three (3) days' notice. In the case of emergency, Lessor may enter at any time to protect life and prevent damage to the Blalock-Goldmine Road Property. Lessor may place a "For Sale" sign in the yard at any time prior to the end of the tenancy term.

**12) Use.**

The Blalock-Goldmine Road Property shall be used for residential purposes only and shall be occupied only by officers, directors, or owners of Lessee. The Blalock-Goldmine Road Property shall be used so as to comply with all federal, state, county and municipal laws and ordinances including any applicable community association bylaws, rules and regulations. Lessee shall not use the Blalock-Goldmine Road Property or permit it to be used for any disorderly or unlawful purpose whatsoever, including but not limited to: illegal drug trafficking and/or other violations of any controlled substance laws. Such conduct shall constitute a breach of the Lease/Option Agreement; and Lessee shall be subject to immediate eviction.

13) **Property Loss By Lessee.**

Lessee shall provide insurance for Lessee's personal property in an amount satisfactory to Lessee. Lessor shall not be liable for any damage to Lessee's property.

14) **Default.**

**(a)** If Lessee defaults in the payment of rental or other sums when due or otherwise defaults under any term, condition or provision of this Lease/Option Agreement, including but not limited to, failure to reimburse Lessor for any damages, repairs or costs when due, then Lessor shall have the option to terminate this Lease/Option Agreement by written notice to the Lessee or, without terminating this Lease/Option Agreement, to enter upon and take possession of the Blalock-Goldmine Road Property, removing all persons and property therefrom and to re-let the Blalock-Goldmine Road Property at the best price obtainable by reasonable effort, without advertisement and by private negotiations and for any term Lessor deems proper. Lessee shall be liable to Lessor for any deficiency between all rental due hereunder and the price obtained by Lessor on such re-letting. Such termination shall not release Lessee from any liability for any unpaid rentals or other amount due under this Lease/Option Agreement, past or future.

**(b)** If Lessee fails to pay rent or any other sum due under this Lease/Option Agreement, abandons the Blalock-Goldmine Road Property, violates any of the Rules and Regulations set forth herein, or otherwise fails to abide by and perform any of the obligations, terms, conditions or provisions of this Lease/Option Agreement, each and any such breach shall constitute a default under this Lease/Option Agreement. If any such default continues for three (3) calendar days after Lessor delivers written notice of said default to Lessee, Lessor may, at his option, terminate this Lease/Option Agreement by delivering written notice thereof to Lessee.

15) **Notices.**

Any notice required or permitted under this Lease/Option Agreement shall be given in writing, addressed as follows in one or more of the following ways:

**(i)** Delivered in person to the person specified for receipt of notices:

(ii) Transmitted by facsimile, provided that the facsimile is transmitted to a facsimile number as set forth below and provided that the party transmitting notice by facsimile is using a machine capable of obtaining confirmation of the facsimile transmission and the confirmation of facsimile transmission is also transmitted to the party receiving the notice:

(iii) Certified mail return receipt requested:

If to Lessor:

Hudgins Holdings, LLC
Attention: Morris M. Sprayberry, Jr., manager
125 Westridge Industrial Parkway
McDonough, Georgia  30253
(770) 474-3363 (facsimile)
*sonspray@aol.com*

and Debtor's counsel:

Jimmy L. Paul
Chamberlain Hrdlicka White Williams & Aughtry
191 Peachtree Street, NE, 34th Floor
Atlanta, Georgia  30303
(404) 659-1852 (facsimile)
*jimmy.paul@chamberlainlaw.com*

If to Lessee:

Peachtree Securities Company
Attention:  Robert S. Prather, Jr., President
3282 Northside Parkway, Suite 275
Atlanta, Georgia  30327
(470) 355-2197 (facsimile)
*bprather@gmail.com*

Any party hereto may change the person, entity, address and facsimile numbers to which notices shall be transmitted by transmitting a notice of change of addressee, which notice of change of addressee shall be delivered in the manner provided for the delivery of notices herein.  Any written communication stating a

- 7 -

notice of change of addressee of receipt of notices shall be delivered in the manner provided for delivery of all other notices as set forth herein and shall be effective ten (10) days after delivery.

## 16) Attorney's Fees.

Whenever any sums due hereunder are collected by law, or by attorney employed to prosecute such an action, then both parties agree that the prevailing party will be entitled to the payment of his reasonable attorney's fees, plus all costs of collection.

## 17) Indemnification.

Lessee releases Lessor from liability for, and agrees to indemnify Lessor against all losses incurred by Lessor as a result of: (i) Lessee's failure to fulfill any condition of this Lease/Option Agreement; (ii) damage or injury happening in or about the Blalock-Goldmine Road Property by Lessee or Lessee's invitees or such persons' property; (iii) Lessee's failure to comply with any requirements imposed by any governmental authority; and (iv) any judgment, lien or other encumbrance filed against the Blalock-Goldmine Road Property as a result of Lessee's action.

## 18) Rules and Regulations.

(a)   Lessee is prohibited from adding locks, changing or in any way altering locks installed on the doors of Blalock-Goldmine Road Property without prior written permission of Lessor. Lessee must return all keys to Lessor before all or part of the security deposit may be refunded. If all keys to the Blalock-Goldmine Road Property are not returned, Lessor may charge a re-key charge in the amount of $50.00.

(b)   Non-operative vehicles are not permitted on the Blalock-Goldmine Road Property. Any such non-operative vehicle may be removed by Lessor at the expense of Lessee, for storage or public or private sale, at Lessor's option; Lessee shall have no right or recourse against Lessor thereafter.

(c)   Lessee agrees to not park any vehicles on the yard. Lessee shall keep the grounds free of rubbish, trash and toys.

(d)   Lessee shall keep the lawn mowed. Lessee shall keep the shrubs trimmed as necessary.

**(e)**   No pets will be allowed under any conditions.

**(f)**   Lessee shall pay and be liable for all utilities, including charges for garbage, water, electricity and natural gas. Lessee shall pay for telephone and cable television.

**(g)**   Lessee agrees to maintain the Blalock-Goldmine Road Property in the condition presented at the time of rental, reasonable wear and tear excepted.

**19)   Abandonment.**

If Lessee removes or attempts to remove personal property from the Blalock-Goldmine Road Property other than in the usual course of continuing occupancy, without having first paid Lessor all moneys due, the Blalock-Goldmine Road Property may be considered abandoned, and Lessor shall have the right, without notice, to store or dispose of any personal property left on the Blalock-Goldmine Road Property by Lessee. Lessor shall also have the right to store or dispose of any of Lessee's personal property remaining on the Blalock-Goldmine Road Property after the termination of this Lease/Option Agreement. Any such personal property shall become Lessor's personal property.

**20)   Legal Action.**

Lessee understands failure to pay rental on the indicated day shall constitute a default and entitle Lessor to demand possession of the Blalock-Goldmine Road Property and enforce such demand by dispossessory warrants. Lessor will make demand and proceedings may be filed at any time subsequent thereto. Lessor may also enforce delinquent or outstanding rental through civil action. Lessee does agree to be responsible for all costs associated with any legal action taken by Lessor against Lessee. Lessee consents that any proceeding to enforce this Agreement or related rights may be brought in any court sitting in the judicial district in which the leased premises may be located, and Lessee consents to personal jurisdiction of such courts and agrees that Lessee may be served with process by certified mail addressed to it at the address given prior. Any actions to enforce this Agreement shall be governed by the laws of the State of Georgia.

**21) Binding Effect and Waiver.**

This document constitutes the entire agreement between the parties and is binding on their respective administrators, assigns and successors. No statements, oral or written, not contained herein shall be of force or effect. The failure of the Lessor to insist upon strict compliance with any of the terms and conditions herein shall not be deemed to be a waiver of any subsequent breach or default in the terms contained herein.

**22) Lessor's Right to Sell The Blalock-Goldmine Road Property During The First 17 Months of Lease.**

During the period from the Approval Date through the end of the seventeenth (17th) month anniversary of the Approval Date, the Lessor shall have the right to sell the Blalock-Goldmine Property pursuant to a third party offer (Lessor's 17 Month Sale Period") subject to satisfaction and release of lien claims by lien holder SFR/RoundPoint and subject to rights of first refusal of Lessee as set forth below.

(a) **Lessor's Sale Rights**. Subject to Lessee's Rights of First Refusal provided in Section 22 (b) below, Lessor shall have the rights to convey the Blalock-Goldmine Road Property pursuant to a *bona fide* written third party offer, so long as the funds provided by the third party purchaser or funds otherwise provided for payment to SFR/RoundPoint are sufficient or more than sufficient to obtain a release of the SFR/RoundPoint Security Deed and other security documents constituting a lien on the Blalock-Goldmine Road Property. Lessor shall be entitled to retain all proceeds of sale of the Blalock-Goldmine Road Property in excess of amounts necessary to obtain a release of the SFR/RoundPoint Security Deed and other security documents.

(b) **Lessee's Right of First Refusal During Lessor's 17 Month Sale Period.** During the first seventeen (17) months of this Lease/Option Agreement, Lessee shall have rights as follow:

If Lessor obtains a *bona fide* offer to sell the Blalock-Goldmine Road Property at a price sufficient or more than sufficient to obtain a release of the SFR/RoundPoint Security Deed and other security documents securing the SFR/RoundPoint Lien Claim, and Lessor decides to accept the offer, Lessor shall first present to Lessee a true and correct copy of a contract executed by the proposed Purchaser ("Proposed Sale Contract"). Lessee shall have fifteen (15)

- 10 -

business days from receipt of a copy of the Proposed Sale Contract within which to give notice of Lessee's agreement to purchase the Blalock-Goldmine Road Property on the same terms set out in the Proposed Sale Contract ("Lessee's Purchase Notice") except that Lessee shall not be required to close in less than thirty (30) days after Lessee's timely delivery of Lessee's Purchase Notice; rather, Lessee shall have the longer of thirty (30) days from delivery of the Lessee's Purchase Notice or the closing date specified in the Proposed Sale Contract in which to close the sale. Delivery of Lessee's Purchase Notice shall result in a binding purchase contract between Lessee and Lessor on the same terms as set out in Proposed Sale Contract, except for the provisions set out immediately above respecting the Closing Date.

  **(c)  Continuance or Termination of Lease**. If Lessor gives notice of a Proposed Sale Contract and closes the purchase of the Blalock Goldmine Road Property whether to the proposed purchaser named in the Proposed Sale Contract or pursuant to Lessee's Right of First Refusal, this Lease/Option Agreement terminates as of the Closing Date. If Lessor does not close a sale of the Blalock-Goldmine Road Property as a result of the Proposed Sale Contract, this Lease/Option Agreement shall continue in effect until the earlier of any closing of sale pursuant to the terms of any other Proposed Sale Contract or the specified termination date of the Lease/Option Agreement.

**23)  Lessee's Option to Purchase.**

  Commencing with the first (1st) day of the eighteenth (18th) month from the Approval Date of this Lease/Option Agreement, and continuing for the remaining term of the Lease/Option Agreement, the Lessee shall have the option during the remaining term of the Lease to purchase the Blalock-Goldmine Road Property for the amount of the SFR/RoundPoint Allowed Claim, minus any reductions as a result of post-Confirmation payments and plus any additions as a result of non-payment of interest at the post-confirmation rate agreed by Lessor and SFR/RoundPoint or the Determined Fair Interest Rate set by the Bankruptcy Court in connection with confirmation of Debtor Lessor's Chapter 11 Plan. Lessee's exercise of option to purchase should be done by notice to Lessor and notice to the holder of the SFR/RoundPoint Security Deed. Lessee's payment of Option Exercise Price shall be paid into escrow established by the closing attorney who shall be selected to consummate the sale of the Blalock-Goldmine Road Property by Lessor to Lessee and which attorney shall pay to the holder of the SFR/RoundPoint Security Deed, the funds necessary to obtain a release and satisfaction of the SFR/RoundPoint Security Deed.

**24)** <u>**Requirement for Approval of Bankruptcy Court.**</u>

This Lease/Option Agreement is subject to the requirement that this agreement be approved by the Bankruptcy Court in the Hudgins Holdings Chapter 11 Case pending in the name and style: *Hudgins Holdings, LLC, Debtor, United States Bankruptcy Court, Northern District of Georgia, Atlanta Division, Chapter 11, Case No. 13-74158-bem,* after notice and hearing consistent with requirements of the Bankruptcy Code and Bankruptcy Rules. In the event this Lease/Option Agreement is not approved by the Bankruptcy Court in the Hudgins Holdings, Chapter 11 Case, this document is not effective.

**IN WITNESS WHEREOF**, the parties hereto have set their hand and seal the day and year written above.

Executed this ____ day of March, 2016

**HUDGINS HOLDINGS, LLC, Debtor-in-Possession**

_____
Morris E. Sprayberry, Jr., managing member

Signed and sealed in my presence
this ___ day of March, 2016.

_____
Witness

_____
Notary Public

**[SIGNATURE CONTINUE ON FOLLOWING PAGE]**

Executed this \_\_\_\_ day of March, 2016

                    **PEACHTREE SECURITIES COMPANY**

                    _____
                    Robert S. Prather, Jr., President

Signed and sealed in my presence
this \_\_\_ day of March, 2016.

_____
Witness

_____
Notary Public
2084909_1.docx

# EXHIBIT "A"

ALL that tract or parcel of land lying and being in part of Land Lot 104 of the 5th Land District of Rabun County, Georgia and being more fully described as follows:

Being subdivision Lot 19 and subdivision Lot 35 of Section B of Lake Burton Shores Subdivision more fully described and delineated on a plat made by J. G. King, Georgia Registered Land Surveyor No. 679 dated August 28, 1958 and recorded on Rabun County, Georgia Deed Records in Plat Book 5, Page 222.

Reference is had and made to said plat and record of same for further description of said lots herein conveyed.

Subject to electric and communication power lines, if same encroach upon caption lands.

Lot No. 35 is subject to exception of right of Georgia Power Company to flood any portion of said lot up to and below 1866 feet above sea level and remove thing or things from lake bed of Burton Lake.

The above described property is conveyed subject to Covenants recorded in Deed Book Q-4, Page 452 and Deed Book J-3, Page 150 Rabun County records.

The above described property is conveyed subject to all easements and restrictive covenants of record, if any.

**EXHIBIT "A"**

(08-0453.PFD/08-0453/12)